**IN THE UNITED STATES COURT**

**FOR THE DISTRICT OF DELAWARE**

MITEL NETWORKS CORPORATION;
MITEL (DELAWARE), INC.,

Plaintiffs,

v.

FACEBOOK, INC.,

Defendant.

**Civil Action No. 1:12-cv-00325-GMS**

**OPENING BRIEF IN SUPPORT DEFENDANT FACEBOOK, INC.'S**
**MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

OF COUNSEL:

Heidi L. Keefe (admited *pro hac vice*)
Mark R. Weinstein (admitted *pro hac vice*)
Brian P. Wikner (admitted *pro hac vice* )
Andrew Mace (admitted *pro hace vice*)
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA 94304-1130
Phone: (650) 843-5000

Steven L. Caponi (DE Bar #3484)
**BLANK ROME LLP**
1201 N. Market Street, Suite 800
Wilmington, DE 19801
302-425-6400
Fax: 302-425-6464

Attorneys for Defendant
Facebook, Inc.

## Table of Contents

**Page**

I. NATURE AND STAGE OF THE PROCEEDINGS ........ 1

II. SUMMARY OF ARGUMENTS ........ 1

III. STATEMENT OF FACTS ........ 2

- A. Facebook's Connections with the Northern District of California Are Extensive, Including Headquarters, Relevant Witnesses, Sources of Proof, and Operative Facts; The Parties' Only Connection to Delaware Is that Two Entities Are Incorporated Here ........ 3
- B. Plaintiffs Have No Connection to Delaware Beyond Incorporation ........ 3
- C. Facebook and Mitel Are in Litigation in the Northern District ........ 4

IV. ARGUMENT ........ 4

- A. Mitel Could Have Brought this Case in the Northern District of California ........ 4
- B. The Relevant Jumara Factors Weigh in Favor of Transfer ........ 5
  1. Mitel's Choice of Forum ........ 6
  2. Facebook's Forum Preference ........ 7
  3. The Situs of Alleged Infringement ........ 7
  4. The Convenience of the Parties and Witnesses ........ 8
  5. The Location of Books and Records ........ 10
  6. Practical Considerations that Could Make Trial Easy, Expeditious, or Inexpensive ........ 11
  7. Local Interest in the Litigation ........ 11
  8. Court Congestion Favors California ........ 13
  9. The Remaining Jumara Factors Are Neutral ........ 13

V. CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*,
295 F. Supp. 2d 393 (D. Del. 2002) ....................6

*Cellectis S.A. v. Precision Biosciences, Inc.*,
Civ. No. 11-173-SLR, 2012 WL 1556489 (D. Del. May 3, 2012)....................8

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)....................8, 9, 10

*In re Hoffmann-La Roche*,
587 F.3d 1333 (Fed. Cir. 2009)....................12

*In re Link_A_Media Devices Corp.*,
662 F.3d 1221 (Fed. Cir. 2011).................... *passim*

*In re Microsoft Corp.*,
630 F.3d 1361 (Fed. Cir. 2011)....................7

*In re TS Tech*,
551 F.3d 1315 (Fed. Cir. 2008)....................12

*In re Zimmer Holdings, Inc.*,
609 F.3d 1378 (Fed. Cir. 2010)....................12

*Joint Stock Society Trade House of Descendants of Peter Smirnoff, Official Purveyor to the Imperial Court v. Heublein, Inc.*,
936 F. Supp. 177 (D. Del. 1996)....................13

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995).................... *passim*

*Pennwalt Corp. v. Purex Indus., Inc.*,
659 F. Supp. 287 (D. Del. 1986)....................6

*QinetiQ Ltd. v. Oclaro, Inc.*,
Civ. No. 09-372 (JAP), 2009 WL 5173705 (D. Del. Dec. 18, 2009) ....................5

*Solomon v. Continental Am. Life Ins. Co.*,
472 F.2d 1043 (3d Cir. 1973)....................13

*Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*,
676 F. Supp. 2d 321 (D. Del. 2009)....................6, 8

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) .... 4

*Virgin Wireless, Inc. v. Virgin Enters. Ltd.*,
201 F. Supp. 2d. 294 (D. Del. 2002) .... 4

*Wacoh Co. v. Kionix Inc.*,
Civil Action No. 10-617-RGA, 845 F. Supp. 2d 597, 2012 WL 70673 (D. Del. Jan. 9, 2012) .... 6, 8, 11

**STATUTES**

28 U.S.C. § 1400(b) .... 5

28 U.S.C. § 1404(a) .... *passim*

**OTHER AUTHORITIES**

15 Charles Allan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 3851 (3d ed. 2008) .... 10

Federal Rule of Civil Procedure 12(b)(6) .... 1

Defendant Facebook, Inc. (“Facebook”) respectfully moves the Court, pursuant to 28 U.S.C. § 1404(a), to transfer this action to the United States District Court for the Northern District of California.

## I. NATURE AND STAGE OF THE PROCEEDINGS

This case is in its early stages. Plaintiffs Mitel Networks Corporation (“Mitel Networks”) and Mitel (Delaware), Inc. (“Mitel (Delaware)”) (collectively, “Mitel”) brought this action in the District of Delaware on March 16, 2012, alleging infringement by Facebook of U.S. Patent No. 5,940,834 (the “’834 patent”), entitled “Automatic Web Page Generator,” and U.S. Patent No. 7,292,685 (the “’685 patent”), entitled “Pro-Active Features For Telephony.” On May 9, 2012, Facebook filed a Motion to Dismiss Mitel’s complaint for failure to state claims of inducement, contributory infringement, and willful infringement pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* D.I. 12.) Facebook’s Motion to Dismiss remains pending before the Court. Facebook has not yet filed an answer, and no discovery has occurred.

On August 10, 2012, Facebook filed a complaint for patent infringement against Mitel in the United States District Court for the Northern District of California. Facebook alleges that Mitel products sold throughout the United States, including in California, infringe two Facebook patents.

## II. SUMMARY OF ARGUMENTS

1. This case has no material connection to the State of Delaware, and the relevant factors weigh strongly in favor of transfer to the Northern District of California. Mitel cannot dispute that it could have brought this action in the Northern District of California. Facebook’s principal place of business, headquarters, and center of its product design, development, and implementation activities, is located in Menlo Park, California. Just a short distance away, a Mitel subsidiary likewise maintains offices in Emeryville, California.

2. Mitel Networks, being a foreign corporation and aware of the significant ties between its claims, Facebook, and the Northern District of California, included as a co-plaintiff Mitel (Delaware). Mitel (Delaware), an Arizona-based subsidiary of Mitel Networks, has no apparent connection to Mitel Networks' lawsuit aside from being incorporated in Delaware, where Mitel Networks chose to bring the instant lawsuit. Mitel (Delaware)'s status as a Delaware company should not entitle Mitel's original choice of forum to any greater weight.

3. The private and public *Jumara* factors considered in a § 1404(a) transfer analysis within the Third Circuit weigh in favor of transferring this action to the Northern District of California. Mitel's attempt to bootstrap a connection to Delaware by bringing its complaint in conjunction with a non-essential subsidiary corporation cannot elevate the weight of its chosen forum over that of the numerous convenience factors that support transfer to California. The majority of the witnesses and documents relevant to Mitel's infringement claims against Facebook are located in Northern California, as are third-party witnesses relevant to invalidity.

4. Indeed, the *only* apparent connection to the District of Delaware is that two of the parties, Mitel (Delaware), Inc. and Facebook, are incorporated here. Standing alone, incorporation in Delaware is an insufficient connection to prevent transfer. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011).

Because the convenience factors favor the Northern District of California, not the District of Delaware, Facebook respectfully requests that this case be transferred to California.

## III. STATEMENT OF FACTS

On March 16, 2012, Mitel filed this patent infringement action against Facebook. Mitel's complaint alleges that Facebook infringes U.S. Patent Nos. 5,940,834 and 7,292,685 (the "patent-in-suit"). (*See* Compl. D.I. 1, ¶¶ 9-22.)

**A. Facebook's Connections with the Northern District of California Are Extensive, Including Headquarters, Relevant Witnesses, Sources of Proof, and Operative Facts; The Parties' Only Connection to Delaware Is that Two Entities Are Incorporated Here.**

Facebook's principal place of business and headquarters is in Menlo Park, California. (Compl. D.I. 1, ¶ 3). Facebook has deep roots in Silicon Valley and was established in Palo Alto in June 2004. (*See* Decl. of Jeremy Jordan in Support of Def. Facebook, Inc.'s Mot. to Transfer Venue ("Jordan Decl.") ¶ 2.) Indeed, except for the first few months of its nascent beginnings, the near entirety of Facebook's existence and operations have occurred at its headquarters in Northern California, currently located in Menlo Park. (*Id.*) Consequently, the vast majority of Facebook's sources of proof and likely witnesses relevant to this action are located in the Northern District of California. (*Id.* ¶¶ 3-4.)

Conversely, none of Facebook's witnesses and evidence are located in the District of Delaware. Though Facebook is incorporated in Delaware, Facebook maintains no offices in this District and knows of no employees who work in this District. (Jordan Decl. ¶ 5.) Facebook is aware of no relevant documents that are located in the District of Delaware. (*Id.*)

**B. Plaintiffs Have No Connection to Delaware Beyond Incorporation.**

Plaintiff Mitel Networks is a foreign corporation with a principal place of business located in Ottawa, Ontario, Canada. (Compl. D.I. 1, ¶ 1.) It appears that Mitel Networks operates in the United States through a series of wholly owned subsidiaries, including co-Plaintiff Mitel (Delaware). (*See id.* ¶ 2.) While Mitel (Delaware) is incorporated in Delaware, its principal place of business is located in Chandler, Arizona, just outside Phoenix. (*Id.*) Other than being the state of its incorporation, Mitel (Delaware) cites no other connection to Delaware. (*See* Compl. D.I. 1). In fact, Mitel has acknowledged that Delaware is *not* a convenient venue in which to litigate. (*See* Decl. of Brian Wikner in Support of Def. Facebook, Inc.'s Mot. to

Transfer Venue ("Wikner Decl.") ¶ 3, Ex. 2 ("Mitel Networks Corp.'s and Mitel (Delaware), Inc.'s Answer and Counterclaims to Pragmatus AV, LLC's First Am. Compl." ¶ 15 ("Mitel admits that venue is proper in this district, but denies that venue is convenient.").)

Moreover, consistent with their past affiliation with Mitel Networks, all of the inventors of Mitel's patents-in-suit, Ms. Debbie Pinard, Mr. Richard Deadman, and Dr. Thomas Gray, appear to remain located in Canada. Ms. Pinard and Mr. Deadman both represent in their professional online profiles that they are located in the Ottawa, Ontario area. (Wikner Decl. ¶¶ 4-5, Exs. 3-4.). Thus, it appears that no connection to Delaware is relevant to any issues in this litigation.

### C. Facebook and Mitel Are in Litigation in the Northern District.

On August 10, 2012, Facebook filed a lawsuit against Mitel Networks and Mitel (Delaware) in the Northern District of California, alleging infringement of two Facebook patents. (Wikner Decl. ¶ 2, Ex. 1 (Compl. for Patent Infringement).) The patents and claims brought against Mitel in the Northern District action are unrelated to those of the present litigation, but involve the same three parties.

## IV. ARGUMENT

### A. Mitel Could Have Brought this Case in the Northern District of California.

This Court has the discretion to transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a). The purpose of transfer is to protect litigants, witnesses, and the public from a waste of time, energy, and money. *See Virgin Wireless, Inc. v. Virgin Enters. Ltd.*, 201 F. Supp. 2d. 294, 299 (D. Del. 2002) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). A threshold question in a motion to transfer under § 1404(a) is whether the suit could have been brought in the proposed transferee district. 28 U.S.C. § 1404(a). "A district is one in which an action 'might have been brought' if that district has (1) subject matter jurisdiction over

the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue." *QinetiQ Ltd. v. Oclaro, Inc.*, Civ. No. 09-372 (JAP), 2009 WL 5173705, at *2 (D. Del. Dec. 18, 2009) (citations omitted). In a patent infringement action, a transferee court where the action "might have been brought" is one "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

Venue in the Northern District of California is proper in this action. Facebook's principal place of business is in Menlo Park, California, within the Northern District of California. (Compl. D.I. 1, ¶ 3.) Facebook's management team and primary engineering facilities are located in the Northern District of California. (Jordan Decl. ¶ 3.) Because Mitel accuses services that are ultimately managed in the Northern District of California, it could have brought this action there.

**B. The Relevant *Jumara* Factors Weigh in Favor of Transfer.**

Motions to transfer within the Third Circuit are not analyzed according to a "definitive formula or list of . . . factors to consider," but rather with reference to "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *see also In re Link_A_Media*, 662 F.3d at 1224 (noting that it would be "improper to ignore" specific *Jumara* factors raised by the parties).

The *Jumara* private and public interest factors relevant to this case are: (1) the plaintiff's chosen forum; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties and witnesses; (5) the location of books and records relevant to the litigation; (6) practical considerations that could make trial easy, expeditious, or inexpensive; (7) local interest in deciding local controversies at home; and (8) the relative congestion of the courts' dockets. *Jumara*, 55 F.3d. at 879-80.

**1. Mitel's Choice of Forum.**

While a plaintiff's choice of forum is entitled to deference, the Federal Circuit has instructed that this factor should not be elevated or made "effectively dispositive" of the transfer analysis. *In re Link_A_Media,* 662 F.3d at 1224. The plaintiff's choice of forum is entitled to less deference when it is not the home forum of the plaintiff. *See Pennwalt Corp. v. Purex Indus., Inc.*, 659 F. Supp. 287, 289 (D. Del. 1986). A corporation's home forum is generally construed as its principal place of business. *See Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321, 330 (D. Del. 2009); *see also Wacoh Co. v. Kionix Inc.*, Civil Action No. 10-617-RGA, 845 F. Supp. 2d 597, 2012 WL 70673, at *3 (D. Del. Jan. 9, 2012) (noting this factor did not weigh as strongly as it would "if plaintiff had its principal place of business (or, indeed, any place of business) in Delaware"); *In re Link_A_Media*, 662 F.3d at 1223 ("Neither § 1404 or *Jumara* list a party's state of incorporation as a factor for a venue inquiry."); *APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 398-99 (D. Del. 2002) (Farnan, J.) (granting motion to transfer where both plaintiff and defendant were Delaware corporations but neither conducted business or had facilities in Delaware).

Plaintiff Mitel Networks is undoubtedly the real party in interest in this action, and as a foreign corporation, its forum choice in Delaware should be given less deference. Mitel Networks is the sole assignee of both patents-in-suit. (Compl. D.I. 1, ¶¶ 7-8; Wikner Decl. ¶¶ 7-8, Exs. 6-7.) Mitel Networks' world-wide product development and operations occur out of its headquarters in Kanata, near Ottawa, Ontario. (Wikner Decl. ¶ 6, Ex. 5.) The inventors on all Mitel patents-in-suit are or were Mitel employees based out of its Ottawa headquarters. (*See* Compl. D.I. 1, Exs. A & B (patents identifying inventors' residences in Kanata, Ottawa, and Carp, Ontario, Canada).) Mitel Networks' only apparent connection to Delaware is its ownership of Mitel (Delaware), which is a wholly owned subsidiary directed to Mitel's U.S.

operations and sales. (*Id.* ¶ 2.)

That Mitel (Delaware) is incorporated in Delaware should not, however, lend greater deference to Mitel's choice of forum. Mitel (Delaware) has no recorded ownership interest in the patents-in-suit, and Mitel makes no allegations in its complaint that Mitel (Delaware) is a licensee or in any way essential to litigating its patents. (*See* Wikner Decl. ¶¶ 7-8, Exs. 6-7 (USTPO assignment records indicating Mitel Networks owns both patents); *see generally* Compl. D.I. 1.) Its *only* purpose in this litigation appears to be for purposes of justifying Mitel Network's choice of venue in Delaware. In reality, Mitel (Delaware)'s "home forum" is the District of Arizona, where it maintains its principal place of business and employees. Mitel (Delaware), like its parent Mitel Networks, maintains no business presence in Delaware whatsoever. (*See* Wikner Decl. ¶ 6, Ex. 5 (list of Mitel world-wide offices).) That Mitel Networks named its wholly owned subsidiary—a non-essential party—as a "co-plaintiff" should not provide any weight to its choice of forum. *See In re Microsoft Corp.*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011) (finding that creating the appearance of a connection with a forum for purposes of manipulating venue entitled such facts to no weight in the transfer analysis).

**2. Facebook's Forum Preference.**

Facebook's preferred forum is the location of the vast majority of its witnesses and evidence relevant to this action: the Northern District of California. As noted above, it is undisputed that this action could have originally been brought in Northern California.

**3. The Situs of Alleged Infringement.**

Mitel's purported claim of patent infringement arose in the Northern District of California, not in Delaware. "[A]s a matter of law, a claim for patent infringement arises wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis S.A. v. Precision Biosciences, Inc.*,

Civ. No. 11-173-SLR, 2012 WL 1556489, at *5 (D. Del. May 3, 2012). Delaware has recognized that, "[t]o some extent, the claims arise where the allegedly infringed products are designed and manufactured." *Wacoh Co.*, 2012 WL 70673, at *4.

The design, development, and engineering of the majority of Facebook's source code and services occurred in Menlo Park, California. (*See* Jordan Decl. ¶ 3.) Facebook's source code is also accessible and ultimate managed from Menlo Park, California. (*Id.*) Conversely, Facebook maintains no facilities in Delaware and is aware of no development or engineering efforts relating to the accused product that occurred there. (*Id.* ¶ 5.)

To the extent Mitel argues that claims of *indirect* infringement arose from this District, there is no support for such a proposition. Facebook has addressed the failings of Mitel's indirect infringement claims in its separately pending motion to dismiss. (*See* D.I. 12.)

**4. The Convenience of the Parties and Witnesses.**

This factor weighs heavily in favor of transfer. As the accused infringer, Facebook will undoubtedly be the source of the most relevant witnesses and information relating to Mitel's claims. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *see also Wacoh Co.*, 2012 WL 70673, at *4 (citing *Genentech* and noting that no witnesses in Delaware and multiple defendant-witnesses in other districts favored transfer). When there are no likely witnesses in the plaintiff's chosen forum, but numerous witnesses in the transferee forum, this factor favors transfer. *See Teleconference Sys.*, 676 F. Supp. 2d at 333 ("The fact that plaintiff has not identified a single material witness who resides in Delaware rather than California is telling and weighs in favor of transfer.")

Facebook's corporate and technology headquarters is in Silicon Valley. (Jordan Decl. ¶ 2.) The majority of the Facebook's likely material witnesses reside within the Northern

District of California.  (*Id.* ¶ 4.)  Facebook does not have offices, employees, or corporate witnesses located in the State of Delaware.  (*Id.* ¶ 5.)  Further, Facebook's highly proprietary information and source code are stored at Facebook's data centers, which are accessible and managed from its Silicon Valley headquarters.  (*Id.* ¶ 3.)  Its headquarters is also where relevant document custodians are likely to be located.  (*Id.*)  It would be significantly more convenient to Facebook's employee-witnesses to have this dispute litigated within the Northern District of California, rather than requiring them to travel cross-country to Delaware.

California is no less a convenient forum for Mitel than is Delaware.  In fact, Mitel itself acknowledges that Delaware is not a convenient forum in which to litigate.  (*See* Wikner Decl. ¶ 3, Ex. 2 ("Mitel admits that venue is proper in this district, but denies that venue is convenient.").)  Mitel's admission is well-founded: it maintains no facilities and appears to have no employees in Delaware.  Moreover, to the extent Mitel (Delaware) is even relevant to this litigation, the hub of its U.S. operations is located in Arizona, which is far closer to the Northern District of California than Delaware.  (*See* Compl. ¶ 2.)  Mitel's U.S. operations also include an office and employees in Emeryville, California, which is located in the Northern District of California.  (*See* Wikner Decl. ¶ 6, Ex. 5.)

Even though Mitel Networks' location in Ottawa is closer to Delaware than California, Mitel will be required to travel a significant distance—over 400 miles—irrespective of venue.  Beyond a shorter international flight, the conveniences gained by Mitel's litigating in Delaware are overshadowed by the far greater burden and inconvenience to Facebook and third-parties.  As plaintiff, Mitel Networks is likely to have far fewer witnesses at trial than Facebook.  *Cf. In re Genentech*, 566 F.3d at 1345.  Mitel is also likely to produce, and be required to bring to trial, far fewer documents than Facebook.  *Id.*  These facts counsel in favor of transfer.

Additionally, Facebook anticipates that non-party witnesses residing within the subpoena power of the Northern District of California will be critically important to issues regarding invalidity of the patent-in-suit. The convenience of witnesses, most particularly non-party witnesses who are important to the resolution of the case is "[o]ften cited as the most important factor in passing on a motion to transfer under Section 1404(a) . . . ." 15 Charles Allan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 3851 (3d ed. 2008). Facebook has identified several non-party witnesses located in the Silicon Valley area that may possess information material to issues in this case, including invalidity. (*See* Wikner Decl. ¶ 10). The convenience of any of these non-party, California-resident witnesses is an important factor, since going to Delaware involves cross-country travel. Further "the[se] witnesses may actually be unavailable for trial" since they are beyond the subpoena power of the District of Delaware. *See Jumara*, 55 F.3d at 879. In contrast, these witnesses are within the subpoena power of the Northern District of California. Moreover, the inventors of the Mitel patents all appear to reside near Ottawa, Canada, which is beyond the absolute subpoena power of either the Delaware or California courts. (*See* Wikner Decl. ¶¶ 4-5, Exs. 3-4.) Accordingly, the factor of the convenience of non-party witnesses favors transfer.

**5. The Location of Books and Records.**

The majority of the relevant books and records in this litigation will be located in the Northern District of California, which further favors transfer. *See In re Genentech*, 566 F.3d at 1345 ("[T]he place where [the accused infringer's] documents are kept weighs in favor of transfer to that location."). As discussed above, Facebook's documents and code will be the primary sources of documentary evidence relevant to Mitel's claims of infringement, and these sources of proof are accessible and ultimately managed from Facebook's Menlo Park office. (Jordan Decl. ¶ 3.) The same is true for nearly all of the information related to Facebook's

general operations, marketing, financials, and customer service. (*Id.*)

Conversely, there is no indication that there are documents or other evidence relevant to this litigation located in the District of Delaware. Accordingly, this factor favors transfer.

**6. Practical Considerations that Could Make Trial Easy, Expeditious, or Inexpensive.**

The practical considerations of litigating a patent infringement case involving Facebook's highly confidential source code further tilt in favor of transfer. As this Court has recognized, it is less expensive and less disruptive to defendant's employees to litigate where its business operations are located. *See Wacoh Co.*, 2012 WL 70673, at *5. Facebook's primary engineering facilities and the offices of its management team are located in the Northern District of California (Jordan Decl. ¶ 3), and litigating this action there would thus be less disruptive and expensive than litigating in the District of Delaware.

Moreover, Facebook has filed a lawsuit against Mitel Networks and Mitel (Delaware) on two Facebook patents in the Northern District of California and, like this case, it is in its earliest stages. (*See* Wikner Decl. ¶ 2, Ex. 1.) By transferring this case to Northern California, where Mitel should have originally brought the action, it will be possible to focus the dispute between the parties in a single location, thereby saving both Facebook and Mitel the expense of litigating in two forums on opposite coasts.

Additionally, counsel for both Mitel and Facebook have offices in Northern California, which would reduce administrative costs associated with litigating in Delaware, as well as the need for Facebook to retain local counsel. Accordingly, the practical considerations weigh in favor of transfer.

**7. Local Interest in the Litigation.**

There is little local interest in having this case tried in Delaware. The only connection

between this case and the District of Delaware is that two of the parties are incorporated here, and that is not a proper basis, standing alone, to deny a motion to transfer. *See Link_A_Media* 2011 WL 6004566, at *3; *see also In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010) (ordering transfer where "the only connection between this case and the plaintiff's chosen forum is a legal fiction.").

Northern California, on the other hand, has a significant interest in this dispute. As noted above, Facebook's likely witnesses and headquarters are in Northern California. (Jordan Decl. ¶ 2.) The allegedly infringing activities, research and development of accused products, and knowledgeable witnesses are located there. (*See* Jordan Decl. ¶¶ 3-4.) Northern California's interest in this case is also significant because Mitel's allegations call into question the work and reputation of the engineers responsible for that work. *See In re Hoffmann-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (finding that the proposed transferee district's "local interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community").

Any argument that the citizens of the District of Delaware have a "substantial interest" in having the case tried locally because some allegedly infringing products were made available in this District has been "unequivocally rejected" by the Federal Circuit. *In re TS Tech*, 551 F.3d 1315, 1321 (Fed. Cir. 2008). As in *TS Tech*, Facebook's allegedly infringing products were available "throughout the United States" and thus "the citizens of the [original forum] have no more or less of a meaningful connection to this case than any other venue." *See id*. Accordingly, this factor weighs heavily in favor of transfer.

**8. Court Congestion Favors California.**

Although relative administrative difficulty resulting from court congestion is difficult to assess, this factor likewise favors transfer. Statistics from the Administrative Office of the U.S. Courts indicate that the Northern District of California has on average 293 cases pending per judge, while the District of Delaware has 425 cases pending per judge.[1] (*See* Wikner Decl. ¶ 9, Ex. 8.) Accordingly, the average time to trial for the Northern District of California is four months faster than in the District of Delaware. (*See id.* (25.4 months for the Northern District of California; 29.4 months for the District of Delaware)). Moreover, congestion is increasing in Delaware but decreasing in the Northern District of California. The District of Delaware experienced one of the largest increases in pending cases in the nation in 2011: the fifteenth largest percentage increase out of ninety-four judicial districts, as opposed to the Northern District of California, which experienced a decrease and ranked eighty-fifth. (*See id.*) *See Joint Stock Society Trade House of Descendants of Peter Smirnoff, Official Purveyor to the Imperial Court v. Heublein, Inc.*, 936 F. Supp. 177, 190 (D. Del. 1996) (consulting previous editions of same tables from Administrative Office of the U.S. Courts to calculate time to trial and pending cases per judge); *Solomon v. Continental Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973) (approving transfer based in part on same).

**9. The Remaining *Jumara* Factors Are Neutral.**

The remaining public interest factors are neutral in the transfer analysis. Both the Northern District of California and the District of Delaware have significant experience in patent litigations. Moreover, because this action is not based on diversity, there are no conflicts of law to avoid.

---

[1] Computed based on number of pending civil cases in each district, according to the U.S. Court statistics, divided respectively by four Article III judges in Delaware and twenty in the Northern District of California.

## V. CONCLUSION

The only apparent connection between this dispute and the District of Delaware is the parties' incorporation in Delaware. The majority of the evidence and witnesses relevant to this case are located in Northern California, where a separate lawsuit between the parties is pending. Thus, the place of incorporation is entitled to little weight. Considering the convenience of the parties and witnesses, the facts weigh heavily in favor of transferring this litigation to the Northern District of California.

Dated: August 13, 2012

By: */s/ Steven L. Caponi*

Steven L. Caponi (DE Bar #3484)
**BLANK ROME LLP**
1201 N. Market Street, Suite 800
Wilmington, DE 19801
302-425-6400
Fax: 302-425-6464

Attorneys for Defendant
Facebook, Inc.

OF COUNSEL:

Heidi L. Keefe (admitted *pro hac vice*)
Mark R. Weinstein (admitted *pro hac vice*)
Brian P. Wikner (admitted *pro hac vice* )
Andrew Mace (admitted *pro hac vice*)
**COOLEY LLP**
3175 Hanover Street
Palo Alto, CA 94304-1130
Phone: (650) 843-5000