IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MITEL NETWORKS CORPORATION and
MITEL (DELAWARE), INC.

                          Plaintiffs,

                v.                          C.A. No. 1:12-CV-00325-GMS

FACEBOOK, INC.,

                          Defendant.

**MITEL NETWORKS CORPORATION AND MITEL (DELAWARE), INC.'S
OPPOSITION TO FACEBOOK, INC.'S MOTION TO TRANSFER VENUE**

FISH & RICHARDSON P.C.
Thomas L. Halkowski (No. 4099)
Susan M. Coletti (No. 4690)
A. Martina Tyreus Hufnal (No. 4771)
222 Delaware Avenue, Suite 1700
Wilmington, DE 19801
Telephone:  (302) 652-5070
Facsimile:  (302) 652-0607
Email:  halkowski@fr.com
Email:  coletti@fr.com
Email: hufnal@fr.com

Of Counsel:
Ruffin B. Cordell (*pro hac vice to be filed*)
Linda Liu Kordziel (*pro hac vice*)
Cherylyn Esoy Mizzo (*pro hac vice*)
1425 K Street, N.W., 11th Floor
Washington, DC 20005
Telephone: 202-783-5070
Email: cordell@fr.com
Email: kordziel@fr.com
Email: mizzo@fr.com

Counsel for Plaintiffs
MITEL NETWORKS CORPORATION
AND MITEL (DELAWARE), INC.

DATED:  August 30, 2012

# TABLE OF CONTENTS

**Page**

I. NATURE AND STAGE OF THE PROCEEDINGS ..........................................1

II. SUMMARY OF ARGUMENT ...................................................................1

III. STATEMENT OF FACTS .......................................................................3

IV. ARGUMENT .........................................................................................4

 A. Legal Standards for Transferring Venue...................................................4

 B. Facebook Has Failed to Establish that the Private
  Interest Factors Weigh Strongly in Favor of Transfer ..............................5

  1. Mitel's Choice of Forum...................................................5

  2. Facebook's Preferred Forum.........................................7

  3. Where the Claims Arose .................................................8

  4. Convenience of the Parties As Indicated By
   Their Physical And Financial Condition.......................................9

  5. Convenience Of The Witnesses (But Only To
   The Extent That The Witnesses May Actually Be
   Unavailable For Trial In One Of The Fora)................................10

  6. The Location of Books and Records (But Only
   To The Extent That They Could Not Be
   Produced In The Alternative Forum)...........................................13

 C. The Public Interest Factors Strongly Weigh Against
  Transfer .................................................................................13

  1. Enforceability of the Judgment...................................13

  2. Practical Considerations...............................................14

  3. Court Congestion .........................................................15

  4. Local Interest in the Deciding Local Controversy
   At Home..........................................................................15

  5. Public Policies of the Fora .........................................16

i

**TABLE OF CONTENTS (cont'd)**

**Page**

      6.     The Court's Familiarity of Relevant State Law in Diversity Cases .............................................................................16

   D.     Summary ...............................................................................17

V.     CONCLUSION..................................................................................17

### TABLE OF AUTHORITIES

**Page**

 **Cases**

*Academisch Ziekenhuis Leiden v. Cardiomems, Inc.*,
　　Civ No. 10-1127, 2011 WL 864911 (D. Del. Mar. 9, 2011) ............................................ 8

*Affymetrix, Inc. v. Synteni, Inc.*,
　　28 F. Supp. 2d 192 (D. Del. 1998)............................................................................. 9, 10

*APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*,
　　295 F. Supp. 2d 393 (D. Del. 2002)................................................................................. 7

*Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co., Inc.*,
　　Civ. No. 06–187, 2006 WL 3783477 (D. Del. Dec. 21, 2006)................................... 11, 15

*Autodesk Can. v. Assimilate, Inc.*,
　　No. 08-587-SLR-LPS, 2009 WL 3151026 (D. Del. Sep. 29, 2009)................................ 16

*Carl Zeiss Meditec, Inc. et al, v. Optovue, Inc.*,
　　C.A. No. 10–084–GMS, 2011 WL 1419714 (D. Del. Apr. 13, 2011)........................ 11, 13

*CNH America LLC v. Kinzenbaw*,
　　Civ. No. 08-945, 2009 WL 3737653 (D. Del. Nov. 9, 2009) ................................... 11, 14

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*,
　　821 F. Supp. 962 (D. Del. 1993) ..................................................................................... 8

*Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*,
　　No. 01-199-SLR, 2001 WL 1617186 (D. Del. Nov. 28, 2001) ......................................... 5

*Energy Transp. Group, Inc. v. William Demant Holding A/S*,
　　C.A. No. 05-cv-422 GMS, 2008 WL 78748 (D. Del. Jan. 4, 2008) ............................... 11

*Helicos Biosciences Corp. v. Illumina, Inc.*,
　　Civ. No. 10–735–SLR, 2012 WL 1556390 (D. Del. May 3, 2012) ............... 4, 5, 6, 10, 16

*In re Link_A_Media*,
　　662 F.3d 1221 (Fed. Cir.  2011).................................................................................. 6, 7

*In re Microsoft Corp.*
　　630 F.3d 1361 (Fed. Cir. 2011)....................................................................................... 8

*Intellectual Ventures I LLC v. Altera Corp.*,
　　842 F. Supp. 2d 744 (D. Del. 2012)............................................................... 6, 10, 15, 16

*Intellectual Ventures, LLC v. Altera Corp.*,
　　No. 10–1065, 2012 WL 297720 (D. Del. Jan. 24, 2012)......................................... 6, 9, 13

## TABLE OF AUTHORITIES (cont'd)

<u>Page</u>

*Investpic, LLC v. SAS Institute, Inc.*,
   Civ. No. 10-1028-RGA, 2012 WL 1753665 (D. Del. May 15, 2012).................. 7, 10, 15

*Jumara v. State Farm Insurance Co.*,
   55 F.3d 873 (3d Cir. 1995)............................................................ 2, 4, 5, 10

*Microsoft Corp. v. Geotag Inc.*,
   847 F. Supp. 2d 675 (D. Del. 2012) ............................................................ 8

*Nice Sys., Inc. v. Witness Sys., Inc.*,
   C.A. No. 06–311–JJF, 2006 WL 2946179 (D. Del. Oct. 12, 2006) ................................ 10

*Praxair, Inc. v. ATMI, Inc.*,
   No. 03–1158-SLR, 2004 WL 883395 (D. Del. Apr. 20, 2004) .................................. 5, 14

*Reavis v. Gulf Oil Corp.*,
   85 F.R.D. 666 (D.C. Del. 1980)............................................................ 6

*Robocast, Inc. v. Apple Inc.*,
   C.A. Nos. 11-235-RGA, 10-1055-RGA, 2012 WL 628010 (D. Del.
   Feb. 24, 2012) ............................................................ 15

*Shutte v. Armco Steel Corp.*,
   431 F.2d 22 (3d Cir. 1970)............................................................ 4, 5

*Stewart Organization, Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988)............................................................ 9

*Tessera, Inc. v. Sony Elecs., Inc.*,
   Civ. No. 10-838 (RMB)(KW), 2012 WL 1107706 (D. Del. Mar. 30,
   2012) ............................................................ 6, 7, 9, 10

*Textron Innovations, Inc. v. The Toro Co.*,
   Civ. No. 05-486 (GMS), 2005 WL 2620196 (D. Del. Oct. 14, 2005)............................ 12

*TriStrata Tech., Inc. v. Emulgen Labs., Inc.*,
   537 F. Supp. 2d 635 (D. Del. 2008)............................................................ 16

*Turn of the Century Solution, L.P. v. Int'l Rectifier Corp.*,
   Civ. No. 05–816, 2006 WL 1653143 (D. Del. June 15, 2006)......................... 8

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964)............................................................ 9

## <u>Statutes</u>

28 U.S.C. § 1404(a) ............................................................ 3, 4, 17

Plaintiffs Mitel Networks Corporation ("Mitel Networks") and Mitel (Delaware), Inc. ("Mitel (Delaware)") (collectively, "Mitel") respectfully submit this opposition to Defendant Facebook, Inc.'s ("Facebook") motion to transfer venue under 28 U.S.C. § 1404(a).

## I.   NATURE AND STAGE OF THE PROCEEDINGS

Mitel brought suit against Facebook on March 16, 2012, alleging infringement of two of Mitel's patents, namely, U.S. Patent Nos. 5,940,834 ("the '834 patent") and 7,292,685 ("the '685 patent"). On May 9, 2012, Facebook filed a motion to dismiss Mitel's claims of inducement, contributory infringement, and willful infringement pursuant to Federal Rule of Civil Procedure 12(b)(6). That motion remains pending before the Court. Notably, Facebook did not move to dismiss Mitel's claim for direct infringement. No discovery has occurred to date.[1] On August 10, 2012—nearly five months after Mitel filed its complaint in this case and one business day before Facebook filed the instant motion to transfer—Facebook filed a complaint against Mitel in the Northern District of California alleging infringement of two patents recently acquired by Facebook.

## II.   SUMMARY OF ARGUMENT

As a preliminary matter, this motion should be denied because Facebook failed to comply with Local Rule 7.1.1, which requires a motion to be "accompanied by an averment of counsel for the moving party that a reasonable effort has been made to reach agreement with the opposing party on the matters set forth in the motion." Local Civ. R. 7.1.1. Facebook did not contact Mitel on this issue before filing the motion to transfer. The rule further provides that

---

[1] Because Facebook's 12(b)(6) motion does not address the direct infringement claim, it is Mitel's position that discovery should start as to this claim, notwithstanding Facebook's pending motion to dismiss. As such, Mitel requested that Facebook meet and confer pursuant to 26(f). *See* Declaration of Cherylyn Esoy Mizzo In Support of Mitel Networks Corporation and Mitel

"[u]nless otherwise ordered, failure to so aver may result in dismissal of the motion." *Id.* Because Facebook failed to meet this requirement, in accordance with the local rules, this Court should dismiss the motion altogether.

As for the motion to transfer, Facebook's arguments fail to establish that, on balance, transfer to the Northern District of California is appropriate. Indeed, Facebook attributes an insufficient amount of weight to Mitel's choice of forum and consistently downplays the significance of the fact that both Mitel (Delaware) and Facebook are Delaware corporations. As such, both Mitel and Facebook should reasonably expect to litigate here. Thus, Mitel should not be deprived of the "paramount consideration" to which its choice of forum is entitled.

In addition, Facebook improperly places undue weight on its assertion that witnesses would be inconvenienced by litigating in Delaware when it failed to provide any evidence of a specific individual's unavailability and/or unwillingness to travel to Delaware for trial. Conversely, Facebook argues that Mitel itself would be inconvenienced by litigating in Delaware despite the fact that Mitel chose the Delaware forum and the first-named inventors of the asserted patents have since signed sworn declarations attesting that they would be willing to travel to Delaware for trial. Facebook's assertions, in addition to several other ancillary arguments, fail to meet the requisite burden of establishing that "on balance the litigation would more conveniently proceed and the interests of justice be better served" by transferring this case to the Northern District of California. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Consequently, this motion should be denied.

---

(Delaware), Inc.'s Opposition to Facebook, Inc.'s Motion to Transfer Venue, ¶ 2, concurrently filed herewith. To date, however, Facebook has not agreed to such a meeting. *Id.*

### III.   STATEMENT OF FACTS

Mitel Networks is a leading global provider of business communications and collaboration software and services.  It is a Canadian corporation with its principal place of business in Ottawa, Canada.  *See* Declaration of Logendra Naidoo, filed concurrently herewith, ¶ 3.  Mitel (Delaware), Inc. is a subsidiary of Mitel Networks and is a Delaware corporation with its principal place of business in Chandler, Arizona.  *Id.*, ¶ 4.  Mitel (Delaware) also has several subsidiaries incorporated in Delaware and that file income tax returns to the state of Delaware. *Id.*, ¶ 5.  Mitel (Delaware) and its subsidiaries are responsible for U.S. operations, including sales and marketing of Mitel products.  *Id.*  In addition, one of the subsidiaries has local offices in Murray Hill, New Providence, New Jersey and Beltsville, Maryland, both of which are within the 100-mile limit of Rule 45.  *Id.*

Facebook, Inc. is the owner and operator of the social networking site, Facebook.  With over 901 million monthly users, a workforce of over 3500 employees, and numerous offices around the world (including on the East Coast), Facebook's presence is truly global in nature. *See* Exs. 2-3.[2]  Facebook incorporated in Delaware on July 29, 2004, has a registered agent for service of process located in Wilmington, Delaware.  *See* Ex. 3.  While Facebook maintains its facilities in its principal place of business, Menlo Park, California, it also has an office located in Washington, D.C., which falls within the 100-mile limit of Rule 45.  *See* Exs. 4-5.  In its complaint, Mitel alleges, *inter alia*, that Facebook's web-based services via operation of its website and mobile applications directly infringe, induce infringement, contribute to infringement, and willfully infringe the '834 and '684 patents.  D.I. at ¶¶ 9-22.

---

[2] Citations to Exhibits in this brief refer to the Exhibits attached to the Declaration of Cherylyn Esoy Mizzo In Support of Mitel Networks Corporation and Mitel (Delaware), Inc.'s Opposition to Facebook, Inc.'s Motion to Transfer Venue, concurrently filed herewith.

## IV.   ARGUMENT

### A.   Legal Standards for Transferring Venue

Pursuant to Section 1404(a), the court may transfer a civil action "for the convenience of the parties and witnesses, in the interest of justice, . . . to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a).   In accordance with Federal Circuit precedent, transfer motions are decided by the law of regional circuit.   *Helicos Biosciences Corp. v. Illumina, Inc.*, Civ. No. 10–735-SLR, 2012 WL 1556390, at *2. (D. Del. May 3, 2012).   In *Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879 (3d Cir. 1995), the Third Circuit established the analytical framework for determining whether transfer is appropriate under 28 U.S.C. § 1404(a).   The Court began by clarifying that the "burden of establishing the need for transfer . . . rests with the movant."   The Court further noted that, "in ruling on defendants' motion[,] the plaintiff's choice of venue should not be lightly disturbed."   *Id*. (citation omitted).   In other words, "unless the balance of convenience of the parties is ***strongly*** in favor of defendant, the plaintiff's choice of forum should prevail."   *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (emphasis added).

Moreover, the Third Circuit noted that courts have been called to consider "many variants of the private and public interests protected by the language of § 1404(a)."   *Jumara*, 55 F.3d at 879.   The private interests include:

> Plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—*but only to the extent that the witnesses may actually be unavailable for trial in one of the fora*; and the location of books and records (*similarly limited to the extent that the files could not be produced in the alternative forum*).

*Id*. (citations omitted) (emphases added).   In addition, the public interests that should be

considered include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted).  Moreover, while transfer decisions fall within the discretion of the district judge, the "the Federal Circuit expects an analysis of all the *Jumara* factors in connection with any transfer decision issued by this court." *Helicos*, 2012 WL 1556390, at *4.

## B.    Facebook Has Failed to Establish that the Private Interest Factors Weigh Strongly in Favor of Transfer

### 1.    Mitel's Choice of Forum

The Third Circuit has clearly stated "that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (internal citations and quotation marks omitted).  Thus, "courts normally defer to a plaintiff's choice of forum." *Jumara*, 55 F.3d at 880.  Indeed, "[t]he deference afforded plaintiff's choice of forum will apply as long as plaintiff has selected the forum for some legitimate reason." *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, No. 01-199-SLR, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001) (internal citations omitted).

Facebook improperly attributes little to no weight to the fact that plaintiff, Mitel (Delaware), is incorporated in Delaware.  *See* D.I. 19 at 2-3, 7.  In particular, Facebook argues that Mitel's choice of forum should be entitled to less deference because, although Mitel (Delaware) is incorporated in Delaware, it maintains its principal place of business in Arizona.  Thus, according to Facebook, Delaware is not its "home turf."  This reasoning, however, has been soundly rejected in numerous decisions of this Court.  *See, e.g., Praxair, Inc. v. ATMI, Inc.*,

5

No. 03–1158-SLR, 2004 WL 883395, at *1–2 (D. Del. Apr. 20, 2004) (holding Delaware is "home turf" as long as company is incorporated in Delaware, regardless of location of principal place of business); *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 754 (D. Del. 2012) ("The Court agrees with those cases that include a corporate entity's state of incorporation as part of its 'home turf.'"); *see also Reavis v. Gulf Oil Corp.*, 85 F.R.D. 666, 673 (D.C. Del. 1980).

As such, the fact that plaintiff Mitel (Delaware) is incorporated in Delaware weighs strongly against transfer. As this Court explained, a "[p]laintiff's incorporation in Delaware represents a rational and legitimate reason to choose to litigate in the state." *Tessera, Inc. v. Sony Elecs., Inc.*, Civ. No. 10-838 (RMB)(KW), 2012 WL 1107706 (D. Del. Mar. 30, 2012) (citing *Intellectual Ventures, LLC v. Altera Corp.*, No. 10–1065, 2012 WL 297720, at *3 (D. Del. Jan. 24, 2012). Indeed, by incorporating in Delaware, a party has "chosen to avail [itself] of the rights, benefits, and obligations that Delaware law affords." *Id*. Thus, contrary to Facebook's assertion, Mitel's choice of forum is entitled to "paramount consideration" and weighs against transfer. *Id*.; *see also Helicos*, 2012 WL 1556390, at *4 ("the court declines to disregard the privilege of choosing a venue that has historically been accorded plaintiffs, absent specific authority making such a distinction").

Facebook also improperly relies on *In re Link_A_Media*, 662 F.3d 1221, 1224 (Fed. Cir. 2011), in support of the proposition that a plaintiff's choice of forum "should not be elevated or made 'effectively dispositive' of the transfer analysis." D.I. 19 at 6. Facebook's reliance on that case is misplaced. As this Court has explained in a number of cases since that decision, the Federal Circuit's ruling in *Link_A_Media* was decided on a specific set of facts (that did not involve a plaintiff that was incorporated in Delaware) and thus does not alter the amount of

deference that should be given to a plaintiff's choice of forum when the plaintiff is a Delaware

corporation:

> Renesas argued in a supplemental submission that the Federal Circuit's recent decision in *In re Link A Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011) supports the propriety of transfer here. It does not. There, the Federal Circuit acknowledged the significance the Third Circuit affords the plaintiff's choice of forum, but found that the District Court had placed undue weight on the plaintiff's choice of forum where the plaintiff filed suit in Delaware and ***the only meaningful connection with Delaware was the defendant's incorporation in Delaware***. Here, in contrast, as discussed above, the deference afforded Plaintiff's choice of forum is appropriately grounded in Plaintiff's own incorporation in Delaware.

*Tessera*, 2012 WL 1107706, at n.4 (emphasis added) (citations omitted); *see also Investpic, LLC*

*v. SAS Institute, Inc.*, Civ. No. 10-1028-RGA, 2012 WL 1753665, at *5 (D. Del. May 15, 2012)

(explaining that *Link_A_Media* generally stands "for the proposition that when the parties, all the

witnesses, and all the evidence are in one distant jurisdiction, and ***the only connection to***

***Delaware is that it is the state of incorporation of the defendant***, and there is no other reason

for the suit to be in Delaware, the suit must be transferred, upon timely request, to the distant

jurisdiction") (emphasis added).[3]   In light of the above, this factor weighs strongly against

transfer.

### 2.      Facebook's Preferred Forum

As to Facebook's preference, Facebook asserts that it prefers to litigate in the Northern

District of California because it would be more convenient.  Facebook's forum preference is not

given the same weight as Mitel's choice of forum under Third Circuit law.  *Tessera*, 2012

---

[3] Two additional cases that Facebook cites in support of its motion are likewise distinguishable. *See APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 398-99 (D. Del. 2002) (finding transfer appropriate because, *inter alia*, the accused products involved heavy baking machinery (as opposed to software) and there was a pending lawsuit in the Eastern District of Texas between the two parties, which had progressed much further along than the Delaware

WL1107706, at *4 (citations omitted).  Moreover, throughout its motion, Facebook glosses over

the important fact that Facebook itself is incorporated in Delaware.  As this Court noted:

> [B]y incorporating in Delaware, it can be assumed that [the defendant] desired the benefits it believed Delaware provides to chartered corporations. [The defendant] chose Delaware as its legal home and should not now complain that another corporation has decided to sue [the defendant] in Delaware.

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 821 F. Supp. 962, 965 (D. Del. 1993).

Facebook's complaints about litigating in Delaware are therefore outweighed by the fact that

Facebook "has enjoyed the benefits and protections of incorporation in Delaware and that the

state has an interest in litigation regarding companies incorporated within its jurisdiction." *Turn

of the Century Solution, L.P. v. Int'l Rectifier Corp.*, Civ. No. 05–816, 2006 WL 1653143, at *7,

(D. Del. June 15, 2006).  Thus, Mitel's decision to sue Facebook in its place of incorporation is

rational and legitimate and should not be disregarded.  *Academisch Ziekenhuis Leiden v.

Cardiomems, Inc.*, Civ No. 10-1127, 2011 WL 864911, at *3 (D. Del. Mar. 9, 2011).  This factor

therefore weighs against transfer.

### 3.    Where the Claims Arose

Facebook mistakenly asserts that the patent infringement claims arose in the Northern

District of California because that is where Facebook's source code and services were designed,

developed and engineered.  Contrary to Facebook's assertion, however, the relevant claim at

issue is whether the Facebook website infringes the patents in suit, which means that the claim

arises wherever the internet is present.  *See Microsoft Corp. v. Geotag Inc.*, 847 F. Supp. 2d 675,

678 (D. Del. 2012) (the court noting, in case involving internet-based patent, that relevant claim

---

lawsuit); *see also, In re Microsoft Corp.*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011)  (applying
Fifth Circuit law).

is "one that arises generally wherever the internet is present").  Accordingly, this factor is neutral in the transfer analysis.

### 4.    Convenience of the Parties As Indicated By Their Physical And Financial Condition

Facebook has also failed to demonstrate a physical or financial condition that would make litigating in Delaware burdensome.  Currently valued at $42 billion dollars and with over 901 million monthly users and over 3500 full-time employees, Facebook is a multi-billion dollar company whose activities, interests, and presence span the globe.  *See* Exs. 2-3.  Thus, any purported hardship imposed upon Facebook for litigating in Delaware is severely diminished by Facebook's extensive financial resources.  *See Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 202 (D. Del. 1998) (finding that defendants were able to shoulder any financial burden imposed by the plaintiff's choice of forum since they were "multi-million dollar corporations with interests and activities spanning the globe"); *see also Intellectual Ventures*, 2012 WL 297720, *3 (noting that multi-billion dollar companies doing business on an international scale have a greater burden to meet in seeking transfer).

Facebook also argues that Delaware would be an inconvenient forum for Mitel.  In support of this assertion, Facebook points to an answer Mitel filed in an entirely separate litigation that is currently pending in this District, in which Mitel "denie[d] that venue is convenient."  *See* D.I. 20 at ¶ 15.  Mitel's response as a defendant in a different, unrelated case has no bearing on the transfer analysis for two reasons.  First, the fact that Mitel deliberately chose to bring this lawsuit in this District necessarily presumes that it would not be inconvenient for Mitel to litigation in this venue.  *See Tessera*, 2012 WL 1107706, at *4 ("the best indicator of a plaintiff's own convenience is the plaintiff's own choice of forum").  Second, it is a fundamental fact that section 1404(a) motions for transfer are to be determined on an

"individualized, case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)); *see also Intellectual Ventures,* 842 F. Supp. 2d at 751. As this Court explained, "the weight which one court might afford to one factor on one day might very well differ from the weight afforded to that same factor by a different court, located in a different district, presiding over a different litigation, between different parties, concerning a different cause of action, involving different facts, different witnesses, and different documents on a different day." *Affymetrix,* 28 F. Supp. 2d at 208. As such, this factor weighs against transfer.

### 5. Convenience Of The Witnesses (But Only To The Extent That The Witnesses May Actually Be Unavailable For Trial In One Of The Fora)

Recognizing that litigation itself is an inconvenient exercise, the Third Circuit has made clear that the determinative factor with respect to this factor is whether witnesses "actually may be unavailable for trial in one of the fora." *Helicos,* 2012 WL 1556390, at *5 (quoting *Jumara,* 55 F.3d at 879). Moreover, "[i]t is the defendant's burden to show both the unavailability of a particular witness and that witness' importance to the defendant's case." *Tessera,* 2012 WL 1107706, at *6.

Rather than identify particular witnesses who will be unavailable or unwilling to travel to Delaware for trial, Facebook only provides general statements of how most of its witnesses will be located in the Northern District of California and how litigation in Delaware would be inconvenient for them. As a preliminary matter, this Court has noted that "it is unlikely that the identified employees will end up testifying in person or even by deposition." *Investpic,* 2012 WL 1753665, at *3. Nonetheless, such speculative statements about who may or may not testify at trial are insufficient to demonstrate that this factor favors transfer.

10

In addition, while Facebook complains that "it would be significantly more convenient to Facebook's employee-witnesses to have this dispute litigated within the Northern District of California, rather than requiring them to travel cross-country to Delaware," D.I. 19 at 9, as employees of Facebook, those witnesses "are presumed willing to testify at trial and thus, are not part of the analysis of this factor." *Carl Zeiss Meditec, Inc. et al, v. Optovue, Inc.,* C.A. No. 10–084–GMS, 2011 WL 1419714, at *3 (D. Del. Apr. 13, 2011)) (citing *Nice Sys., Inc. v. Witness Sys., Inc.*, C.A. No. 06–311–JJF, 2006 WL 2946179, at *2 (D. Del. Oct. 12, 2006)).  Moreover, this Court has recognized that a flight to Delaware is not an onerous task warranting transfer. *Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co., Inc.*, Civ. No. 06–187, 2006 WL 3783477, at *2 (D. Del. Dec. 21, 2006).[4]

As for non-party witnesses, Facebook only generally references "several non-party witnesses located in the Silicon Valley area that may possess information material to issues in this case, including invalidity," and argues that the convenience as to these California-based witnesses is an "important factor."  D.I. 19 at 10.  Notably, Facebook appears to be referencing ten inventors of numerous prior art patents that are cited on the face of the patents-in-suit – all of whom are located in California.  D.I. 20 at ¶ 10.  Tellingly, however, Facebook entirely ignores 27 other named inventors of eleven other cited prior art U.S. patents and patent publications who live outside of California.  *See* Ex. 6.  Thus, Facebook's cherry-picking of California-based inventors of prior art patents fails to demonstrate why this case should be transferred.  In fact,

---

[4] This Court has also acknowledged that "[p]otential witnesses based outside Delaware can be deposed in their home states, and in general, 'progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome.'" *CNH Am. LLC v. Kinzenbaw*, Civ. No. 08-945, 2009 WL 3737653, at *3 (D. Del. Nov. 9, 2009) (citing *Energy Transp. Group, Inc. v. William Demant Holding A/S*, C.A. No. 05-cv-422 GMS, 2008 WL 78748, at *5 (D. Del. Jan. 4, 2008)).

when considering the additional named inventors that Facebook deliberately omitted, this factor actually favors maintaining the suit in Delaware since at least fourteen of those individuals appear to be located on the East Coast.[5]

Lastly, Facebook notes that the inventors of the patents in suit are residents of Canada and argues that this is another reason as to why this case should be transferred to California. This argument is inapt since Delaware, which is approximately 390 miles from Ottawa, would be far more convenient to travel for trial compared to California, which is over six times that distance (approximately 2400 miles). *See* Exs. 7-8. Indeed, in terms of travel options, direct flights are offered from Ottawa to Philadelphia with total air travel times lasting approximately one hour and thirty minutes. *See* Ex. 9. In contrast, from Ottawa to any of the three airports in the San Francisco Bay area, no direct flights are offered and the shortest flights include a seven hour and six minute trip to San Francisco, an eight hour and fifty-one minute trip to San Jose, and a ten hour and thirty-nine minute trip to Oakland, California. *See* Exs. 10-12. Undoubtedly, traveling would be far more convenient for the inventors of the patents, as well as other Mitel witnesses, if the case were to remain in Delaware.

Moreover, Facebook's argument must be rejected in light of the fact that although the first-named inventors of the asserted patents, Thomas Gray and Debbie Pinard, are no longer Mitel employees, they have indicated by sworn declaration that they would be willing to appear in Delaware for trial, if necessary. *See* Declarations of Debbie Pinard and Thomas Gray, both filed concurrently herewith; *see also Textron Innovations, Inc. v. The Toro Co.*, Civ. No. 05-486

---

[5] In its motion, Facebook appears to be relying on the location of these potential witnesses as of the date of the prior art references, i.e. between the time frame of 1988-1998, and fails to provide any indication as to where those witnesses reside now. This is yet another reason why Facebook's argument as to this factor is flawed and therefore should be rejected.

(GMS), 2005 WL 2620196, at *2 (D. Del. Oct. 14, 2005) ("any inconvenience to the inventors weighs in favor of maintaining the action in Delaware" in light of sworn declarations that they are willing to travel to Delaware). Thus, because Facebook fails to meet its burden of identifying particular witnesses who would be unavailable for trial and also fails to take into account the possibility that such witnesses may voluntarily appear at trial, *see Intellectual Ventures*, 2012 WL 297720, at *11, this factor weighs against transfer.

### 6.    The Location of Books and Records (But Only To The Extent That They Could Not Be Produced In The Alternative Forum)

Facebook asserts that "the majority of the relevant books and records in this litigation will be located in the Northern District of California, which further favors transfer." D.I. 19 at 10. This Court has made clear that the mere location of books and records is not the relevant inquiry. Indeed, Facebook must demonstrate that the relevant documents cannot be produced in Delaware, which it fails to do. *Carl Zeiss Meditec*, 2011 WL 1419714, at *3. Moreover, as this Court noted:

> [T]echnological advances have substantially reduced the burden of having to litigate in a distant forum . . . These technologies have shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded and can be transferred and have lowered the cost of moving that information from one place to another.

*Id.* at *4. Accordingly, this factor is neutral.

### C.    The Public Interest Factors Strongly Weigh Against Transfer

### 1.    Enforceability of the Judgment

Facebook does not argue that this factor favors transfer. Nor is there any suggestion that a judgment would be unenforceable in either District. Accordingly, this factor is neutral.

### 2.      Practical Considerations

Facebook generally asserts that this case should be litigated in the Northern District of California because it would be "less expensive and less disruptive to defendant's employees to litigate where its business operations are located." D.I. 19 at 11.  As discussed above with regard to the convenience of witnesses prong, Facebook again fails to identify with specificity which purported witnesses would be potentially inconvenienced, the materiality of such witnesses, and/or how those witness would be inconvenienced.  Facebook's passing reference to "highly confidential source code" and engineering facilities that are located in California fails to identify any potential inconvenience to Facebook employees.[6]  To the extent Facebook is referring to depositions of Facebook employees, as discussed *supra*, "[p]otential witnesses based outside Delaware can be deposed in their home states." *CNH Am.*, 2009 WL 3737653, at *3 (citations omitted).

Moreover, Facebook argues that because there is a second lawsuit that has been recently filed by Facebook against Mitel in the Northern District of California, this case should be transferred so that it would be possible to "focus the dispute between the parties in a single location." D.I. 19 at 11.  The Court should not condone Facebook's litigation tactics.  The fact that Facebook filed the California lawsuit five months after Mitel filed its Complaint in this case and just one business day before filing the present motion to transfer suggests that Facebook's decision to file a second lawsuit, at least in part, was a tactical decision that would enable Facebook to argue that a second lawsuit in the Northern District of California would warrant transfer.  Such litigation-driven tactics should have no bearing on the 1404(a) analysis.

---

[6] This is particularly true when source code is typically produced in these types of patent infringement actions in the offices of outside counsel and not in the defendant's place of business.

14

Moreover, no weight should be given to the second-filed lawsuit in the Northern District of California since Facebook asserts that the two cases involve entirely different patents and claims, and thus no overlapping issues exist. *Id*. at 4 ("[t]he patents and claims brought against Mitel in the Northern District action are unrelated to those of the present litigation"); *see Praxair,* 2004 WL 883395, at *2 (finding judicial efficiency lacking where patents related to same technology field but "involve[d] different patents, claims, inventors, prosecution histories and a different set of alleged infringing activities"); *see also*, *Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co., Inc*., Civ. No. 06–187, 2006 WL 3783477, at *3 (D. Del. Dec. 21, 2006). As such, this factor does not weigh in favor of transfer.

### 3.    Court Congestion

Facebook lists some statistics regarding the two fora at issue in an attempt to assert that this factor favors transfer. D.I. 19 at 13. This Court has rejected such statistics when evaluating this factor because they are not "meaningful in predicting what would happen with this particular case," either in Delaware or in the proposed transferee court. *Investpic*, 2012 WL 1753665, at *4. Moreover, given that this Court no longer has a judicial vacancy "for the first time in nearly five years," Facebook's argument that court congestion favors transfer to California should be rejected. *See Intellectual Ventures*, 842 F. Supp. 2d at 759-60 ("Particularly given that this Court—for the first time in nearly five years—no longer has a judicial vacancy, the Court is not persuaded that administrative difficulties due to court congestion favor transfer."). This factor, therefore, does not weigh in favor of transfer.

### 4.    Local Interest in the Deciding Local Controversy At Home

Contrary to Facebook's assertions, Delaware has a significant interest in deciding this controversy because both Mitel and Facebook are Delaware citizens. *See Intellectual Ventures*, at 760 ("Delaware has a strong interest in adjudicating disputes among its corporate citizens. The

instant case involves litigation solely among Delaware corporations."); *see also Autodesk Can. v. Assimilate, Inc.*, No. 08-587-SLR-LPS, 2009 WL 3151026, at *9 (D. Del. Sep. 29, 2009) ("Delaware clearly has a substantial interest in addressing lawsuits brought against Delaware corporations.").  Moreover, the fact that defendant Facebook is a major employer in the Northern District of California does not convert the present patent infringement claim into a local California controversy.  *See Robocast, Inc. v. Apple Inc.,* C.A. Nos. 11-235-RGA, 10-1055-RGA, 2012 WL 628010 (D. Del. Feb. 24, 2012) ("Apple is a major employer in the Northern District of California, but I do not think that makes the claim that Apple is infringing the patent of a Delaware company with a principal place of business in New York into a local California controversy.  Thus, I think this factor is neutral.").

Notwithstanding the above, the local interest factor is typically neutral in patent litigation, "because patent issues do not give rise to a local controversy or implicate local interests." *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008); *see also Helicos*, 2012 WL 1556390, at *7 ("patent litigation does not constitute a local controversy in most cases [because] [p]atent cases implicate constitutionally protected property rights").  As such, this factor is neutral.

### 5.      Public Policies of the Fora

This Court recently stated that the "public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for resolution of business disputes." *Intellectual Ventures*, 842 F. Supp. 2d at 760 (quotation omitted).  Accordingly, this factor weighs against transfer.

### 6.      The Court's Familiarity of Relevant State Law in Diversity Cases

This case is not a diversity case.  Thus, this factor is not applicable.

### D.   Summary

In light of the foregoing, Facebook has failed to meet its burden of establishing that transfer to the Northern District of California is warranted under the circumstances.  With regard to the private interest factors, Facebook fails to identify sufficient reasons to overcome the considerable deference accorded to a Delaware corporation's choice of forum under Third Circuit law.  In addition, aside from general statements that litigating in Delaware would be inconvenient for Facebook witnesses and potential third party witnesses (which Facebook purposely limited to California-based inventors only), Facebook fails to produce any evidence showing that those witnesses would be unavailable or are unwilling to travel to Delaware for trial and deliberately ignores a multitude of other potential third party witnesses who live outside of California (many of whom live on the East Coast).  Regarding the public interest factors, Facebook fails to establish that any one of those factors strongly favor transferring this case to the Northern District of California.  On balance, the private and public interest factors that must be considered in a motion under 28 U.S.C. § 1404(a) clearly weigh against transferring this case to the Northern District of California and in favor of maintaining this action in Delaware.

## V.   CONCLUSION

For the foregoing reasons, Mitel respectfully requests that this Court deny Facebook's motion to transfer under 28 U.S.C. § 1404(a).

Dated:  August 30, 2012

Respectfully submitted,

FISH & RICHARDSON P.C.


By: */s/ Susan M. Coletti*
    Thomas L. Halkowski (No. 4099)
    Susan M. Coletti (No. 4690)
    A. Martina Tyreus Hufnal (No. 4771)
    222 Delaware Avenue, Suite 1700
    Wilmington, DE 19801
    Telephone:  (302) 652-5070
    Facsimile:   (302) 652-0607
    Email:  *halkowski@fr.com*
    Email:  *coletti@fr.com*
    Email:  *hufnal@fr.com*

    Of Counsel:
    Ruffin B. Cordell (*pro hac vice to be filed*)
    Linda Liu Kordziel (*pro hac vice*)
    Cherylyn Esoy Mizzo (*pro hac vice*)
    FISH & RICHARDSON P.C.
    1425 K Street, N.W., 11th Floor
    Washington, DC 20005
    Telephone: 202-783-5070
    Facsimile: 202-783-2331
    Email: *cordell@fr.com*
    Email: *kordziel@fr.com*
    Email: *mizzo@fr.com*

    *Counsel for Plaintiffs MITEL NETWORKS*
    *CORPORATION AND MITEL (DELAWARE), INC.*