IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MITEL NETWORKS CORPORATION and MITEL (DELAWARE), INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 12-cv-325 (GMS) |
| FACEBOOK, INC., | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

### I.   INTRODUCTION

On March, 16, 2012, the plaintiffs, Mitel Networks Corporation ("Mitel Networks") and

Mitel (Delaware), Inc. ("Mitel Delaware") (collectively, "Mitel" or "the plaintiffs"), initiated the

instant action against Facebook, Inc. ("Facebook"). (D.I. 1.) The plaintiffs allege infringement of

U.S. Patent Nos. 5,940,834 ("the '834 Patent") and 7,292,685 ("the '685 Patent"). (*Id.* at ¶¶ 9-22.)

Presently before the court is Facebook's Motion to Transfer this action to the Northern District of

California pursuant to 28 U.S.C. § 1404(a). (D.I. 18.) For the reasons that follow, the court will

grant Facebook's Motion to Transfer. (*Id.*)

### II.   BACKGROUND

As described in the Complaint and the parties' briefing, Mitel Networks is a Canadian

corporation with its principal place of business in Ontario, Canada. (D.I. 1 at ¶ 1.) Mitel Delaware

is a Delaware corporation with its principal place of business in Chandler, Arizona. (*Id.* at ¶ 2.)

Mitel Delaware is a subsidiary of Mitel Networks and, according to the Complaint, is responsible

for U.S. operations, including sales and marketing, for Mitel Networks. (*Id.* at ¶ 2.) Facebook is

a Delaware corporation with its principal place of business in Menlo Park, California. (*Id.* at ¶ 3.)

## III.   STANDARD OF REVIEW

Under 28 U.S.C. § 1404(a), a district court has "broad discretion to determine, on an individualized, case-by-case basis, whether the convenience and fairness considerations weigh in favor of transfer."[1] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). The court engages in a two-step inquiry. It first determines whether the action could have been brought originally in the proposed transferee forum and then asks whether transfer would best serve the convenience of the parties and witnesses as well as the interests of justice. *Smart Audio Techs., LLC v. Apple, Inc.*, No. 12-134-GMS, 2012 WL 5685742, at *1 (D. Del. Nov. 16, 2012). It is the defendant's responsibility to demonstrate that transfer is appropriate at each step, *Jumara*, 55 F.3d at 879-80, and, "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

## IV.   DISCUSSION

A. The Propriety of the Transferee Forum

The court may only transfer an action to a "district or division where it might have been brought." 28 U.S.C. § 1404(a). Accordingly, the court may only grant the defendant's motion to transfer to the Northern District of California if venue would have been proper there and if that district court could have exercised personal and subject matter jurisdiction over this action. 17 James Wm. Moore et al., *Moore's Federal Practice* § 111.12[b] (3d ed. 2012).

The defendant argues, and the plaintiffs do not dispute, that this action could have been brought in the Northern District of California. (D.I. 19; D.I. 24; D.I. 29.) Indeed, Facebook's

---

[1] The statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

principal place of business and headquarters is in Menlo Park, California and was established in Palo Alto in June 2004. (D.I. 19 at 3.) In addition, Facebook filed suit against Mitel Networks and Mitel Delaware in the proposed transferee forum on August 10, 2012 alleging infringement of two of Facebook's unrelated patents. (*Id.* at 4.) Under 28 U.S.C. § 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Venue, therefore, would have been proper in the Northern District of California, because Facebook's headquarters and principal place of business are located in that District. Likewise, personal jurisdiction would have existed due to the Facebook's presence in California, and subject matter jurisdiction would have existed under 28 U.S.C. § 1338.[2] Thus, the court finds that this action might have been brought originally in the proposed transferee forum and proceeds to the second stop of the transfer analysis.

B. The *Jumara* Analysis

The court next must consider whether transfer to the Northern District of California would serve the interests of convenience and justice. In the Third Circuit, this requires an individualized analysis, considering the various private and public interests guarded by § 1404(a). *See Jumara*, 55 F.3d at 879. To this end, the court does not apply any "definitive formula," but, instead, considers each of these "*Jumara* factors" on a case-by-case basis. *See id.* The private interests may include:

> plaintiff's forum preference as maintained in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for

---

[2] Section 1338(a) provides, in pertinent part: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." 28 U.S.C. § 1338(a).

trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* The public interests may include:

the enforceability of the judgment: practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80. The court addresses each of these "*Jumara* factors" in turn.

    1. Private Interest Factors

        a. *Plaintiff's forum preference*

The first private interest factor is the "plaintiff's forum preference as manifested in the original choice." *Jumara*, 55 F.3d at 879. Facebook argues that Mitel's choice of forum is entitled to little weight, because Mitel has chosen to litigate in Delaware, which is not its "home turf," and is a forum with little connection to this case. (D.I. 19 at 6-7; D.I. 29 at 3-4.) Facebook also asserts that Mitel Networks, not Mitel Delaware, is the real party in interest in this case and that Mitel Delaware was added as a co-plaintiff simply for jurisdictional purposes due to its incorporation in Delaware. (D.I. 26 at 3.) Specifically, Facebook notes that Mitel Delaware is not an assignee or licensee of the patents-in-suit and that Mitel Networks—a Canadian corporation—is the true plaintiff in this action. (*Id.*) Thus, Facebook argues that Mitel's choice of forum in Delaware is not entitled to deference and should be given, at most, little weight.

Mitel responds that it selected Delaware as a forum for this case and that this selection is entitled to "paramount consideration in any determination of a transfer request" and "should not be lightly disturbed" because Mitel Delaware is incorporated in this District. (D.I. 24 at 5 (citing *Shutte*, 431 F.2d at 25).) Moreover, Mitel asserts that its selection of Mitel Delaware's state of incorporation constitutes a "legitimate reason" for choice of forum in the *Jumara* analysis. Mitel

argues that its principal place of business location should not influence the transfer decision, because incorporation in a state is sufficient to establish "home turf." (*Id.* at 5-6 (citing *Praxair, Inc. v. ATMI, Inc.*, No. 03-1158-SLR, 2004 WL 883395, at *1-2 (D. Del. Apr. 20, 2004); *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 754 (D. Del. 2012).) Thus, Mitel contends that Mitel Delaware's incorporation in Delaware weighs strongly against transfer. (*Id.* (citing *Tessera, Inc. v. Sony Elecs., Inc.*, Civ. No. 10-838 (RMB)(KW), 2012 WL 1107706 (D. Del. Mar. 30, 2012) (citation omitted) ("Plaintiff's incorporation in Delaware represents a rational and legitimate reason to choose to litigate in the state.").) Mitel does not respond to Facebook's assertion that Mitel Delaware is not the real party in interest because it is not the assignee or licensee of the patents-in-suit or that Mitel Delaware is a plaintiff in this action simply for jurisdictional purposes.

While Mitel is correct that "the court has observed that a corporate entity's state of incorporation is part of its 'home turf,'"[3] it is not alone dispositive in the analysis. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011). Though Mitel has chosen to litigate in Delaware through Mitel Delaware's incorporation, and this decision must be accorded some deference in the § 1404(a) analysis[4], the fact that Delaware is not home to either Mitel Networks' or Mitel Delaware's principal place of business reduces somewhat the weight this factor is accorded. *See Mitek Sys., Inc.*, 2012 WL 3777423, at *5; *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. 11-400-GMS, 2013 WL 105323, at *3 (D. Del. Jan. 7, 2013); *Smart Audio Techs., L.L.C. v. Apple, Inc.*, No. 12-134 (GMS), 2012 WL 5865742, at *1 (D. Del. Nov. 16, 2012); *see also In*

---

[3] *See Mitek Sys., Inc. v. United Servs. Auto Ass'n*, No. 12-462-GMS, 2012 WL 3777423, at *5 (D. Del. Aug. 20, 2012); *Intellectual Ventures I LLC*, 842 F. Supp. 2d 759.

[4] *See Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1332 (Fed. Cir. 2011) ("Given that both parties were incorporated in Delaware, they had both willingly submitted to suit there, which weighs in favor of keeping the litigation in Delaware."); *Intellectual Ventures I LLC*, 842 F. Supp. 2d at 759 ("The Court agrees with those cases that include a corporate entity's state of incorporation as part of its 'home turf.'").

*re Link_A_Media Devices, Corp.*, 662 F.3d at 1222-23 ("When a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference.").

Moreover, the court finds compelling Facebook's assertion—to which Mitel did not respond in its briefing—that the Canadian company, Mitel Networks, not Mitel Delaware, is the real party in interest, as it is the sole owner of the patents-in-suit. (D.I. 19 at 7.) In fact, aside from Mitel Delaware's incorporation in Delaware and the fact that it "file[s] income tax returns to the state of Delaware," it does not appear from Mitel's submissions that Mitel Delaware operates or does any business in the state as Mitel Network's subsidiary. (D.I. 24 at 3.) In addition, Mitel Networks is a foreign entity that does not maintain offices or employees in Delaware and does not itself do business in this District. (D.I. 26 at 4.) Indeed, Mitel Networks' world-wide product development and operations occur out of its headquarters in Kanata, near Ottawa, Ontario and the inventors of the patents-in-suit are or were Mitel employees based out of the Ottawa headquarters. (D.I. 19 at 6.) Mitel Networks' only connection to Delaware is through its wholly-owned subsidiary, Mitel Delaware, which does not, itself, operate in the District.

In view of the foregoing, the court concludes that Mitel's forum selection is entitled to some degree of heightened deference, but not to "paramount consideration." *See Smart Audio Techs.*, 2012 WL 5865742, at *6; *AIP Acquisition LLC v. iBasis, Inc.*, No. 12-616-GMS, 2012 WL 5199118, at *3 (D. Del. Oct. 19, 2012).

### b. *Defendant's forum preference*

The next private interest factor to consider is the defendant's forum preference. *See Jumara*, 55 F.3d at 879. In this case, Facebook clearly prefers to litigate in the Northern District of California, the District where it operates its principal place of business and headquarters. This factor weighs in favor of transfer.

6

c.  *Whether the claims arose elsewhere*

The third private interest factor the court must consider is "whether the claim arose elsewhere." *Jumara*, 55 F.3d at 879. "[A]s a matter of law, a claim for patent infringement arises whenever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012) (quoting 35 U.S.C. § 271(a)); *see also Smart Audio Techs.*, 2012 WL 5865742, at *7. Accordingly, where the defendant in a patent infringement action operates on a national level, this factor is often neutral. Mitel argues that this factor should be neutral here because the relevant claim at issue "is whether the Facebook website infringes the patents[-]in[-]suit, which means that the claim arises wherever the [I]nternet is present." (D.I. 24 at 8 (citing *Microsoft Corp. v. Geotag, Inc.*, 847 F. Supp. 2d 675, 678 (D. Del. 2012).)

Importantly, however, the court has recognized that "[t]o some extend, [infringement] claims ar[i]se where the allegedly infringing products [a]re designed and manufactured." *Smart Audio Techs.*, 2012 WL 5865742, at *7 (quoting *Wacoh Co. v. Kionix, Inc.*, 845 F. Supp. 2d 597, 602 (D. Del. 2012)). Here, Facebook argues that this factor should weigh in favor of transfer because the "design, development, and engineering of the majority of Facebook's source code and services occurred in Menlo Park, California," "Facebook's source code is also accessible and ultimate[ly] managed from Menlo Park," and "Facebook maintains no facilities in Delaware and is aware of no development or engineering efforts relating to the accused product that occurred there." (D.I. 24 at 7-8.) The court agrees. Because Facebook created, developed, and engineered its product largely in the Northern District of California, this factor weighs slightly in favor of transfer.[5]

---

[5] As noted, Mitel cites to the statement in *Microsoft v. Geotag, Inc.*, that, in a case involving an internet-based patent, the relevant claim is "one that arises generally wherever the [I]nternet is present." (D.I. 24 at 9.) However,

### d. *Convenience of the parties*

The court must also determine whether the proposed transferee forum would be more convenient for the parties. *See Jumara*, 55 F.3d at 879. In this assessment, the court weighs several considerations, including: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Smart Audio Techs.*, 2012 WL 5865742, at \*7 (internal quotation omitted). Thus, the court is tasked with assessing the "convenience of the parties as indicated by their relative physical and financial condition." *See Jumara*, 55 F.3d at 879.

Facebook suggests that litigating in the Northern District of California is more convenient. Specifically, Facebook notes that: (1) none of the parties operate in Delaware; (2) it will "undoubtedly be the source of the most relevant witnesses and information relating to Mitel's claims" and "[t]he majority of [its] likely material witnesses reside within the Northern District of California" (D.I. 19 at 8-9); (3) it does not have offices, employees, or corporate witnesses in Delaware (*id.* at 9); (4) its "highly proprietary information and source code are stored at [its] data centers, which are accessible and managed from its Silicon Valley headquarters" (*id.*); (5) its headquarters house relevant document custodians (*id.*); (6) it "would be significantly more convenient to [its] employee-witnesses to have this disputed litigation within the Northern District of California, rather than requiring them to travel cross-country to Delaware" (*id.*); (7) it anticipates

---

Mitel does not provide the full context for this language. In fact, that opinion also states that, "[i]f I had to choose a specific location where the claims arise, I think it would be better understood as being in Washington and California, where the plaintiffs create and sell their mapping services." *Microsoft v. Geotag, Inc.*, 847 F. Supp. 2d 675, 678 (D. Del. 2012). And, as made clear above, courts have recognized that, "[t]o some extent, the claims araise where the allegedly infringed products are designed and manufactured." *See Wacoh Co.*, 2012 WL 70673, at \*4.

that non-party witnesses residing within the subpoena power of the Northern District of California will be critically important to issues regarding invalidity (*id.* at 10); and (8) Mitel does not operate any facilities or appear to have any employees in Delaware (*id.* at 9). Facebook further argues that California is no less of a convenient forum than Delaware. As noted above, Mitel Delaware operates its principal place of business in Arizona, which is closer to the proposed transferee venue than Delaware, and Mitel's U.S. operations also include an office and employees in Emeryville, California, which is located in the Northern District of California. (*Id.*) Thus, even though Mitel Network's location in Ottawa is closer to Delaware than California, Mitel will still have to travel at least 400 miles, regardless of venue location. (*Id.*) In sum, Facebook contends that the convenience gained by litigating in California outweigh the burden of a potentially longer flight for Mitel, particularly in light of the fact that Mitel will have to produce far fewer witnesses. (*Id.*)

Conversely, Mitel argues that Facebook has failed to demonstrate a physical or financial burden that would make litigating in Delaware burdensome. (D.I. 24 at 9.) Specifically, Mitel notes that Facebook is valued at over $42 billion dollar, has over 901 million users monthly, and employs over 3,500 full-time employees. (*Id.*) To this end, Mitel asserts that any purported hardship imposed upon Facebook for litigating in Delaware is severely diminished by its extensive financial resources. (*Id.* (citing *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 202 (D. Del. 1998); *Intellectual Ventures I LLC*, 2012 WL 297720, at *3).) Mitel also rejects Facebook's assertion that litigating in Delaware would be inconvenient, as evidenced by the fact that Mitel filed suit in this District. (*Id.*)

As noted, Facebook suggests that litigation in the Northern District of California would prove more convenient, because it would not have to travel to Delaware and Mitel will have to travel regardless of where the litigation takes place. Therefore, should this action remain in the

District of Delaware, all of the parties would be required to travel. Mitel argues that Facebook has significant financial resources, making their added costs of litigating here insignificant.

The court, however, is not entirely persuaded by either party with regard to this factor. While Facebook does, indeed, have sizable financial resources, such resources do "not blind the court to the inevitable costs and disruptions that cross-country litigation imposes." *See Linex Techs., Inc. v. Hewlett-Packard Co.*, Civ. A. No. 11-400-GMS, 2013 U.S. Dist. LEXIS 1924, at *13 (D. Del. Jan. 7, 2013). Moreover, while Mitel will have to travel regardless of the court's decision, it is reasonable to presume that transfer to California would increase Mitel Networks travel costs.[6] Unfortunately, on the briefing before it, the court cannot adequately assess the "relative ability of each party to bear these costs." As such, the court is left simply with the knowledge that an adverse transfer decision would subject both sides to some degree of inconvenience.

Importantly, however, Mitel correctly points out that Facebook is incorporated in Delaware and, therefore, has submitted to suit in this District. (D.I. 24 at 9-10.) Indeed, "a Delaware corporation must expect an uphill climb in proving that it is, in any meaningful sense, 'inconvenient' to defend its actions in the forum in which the corporation has freely chosen to create itself." *Intellectual Ventures I*, 842 F. Supp. 2d at 756; *see also Linex Techs., Inc.*, 2013 U.S. Dist. LEXIS 1924, at *15; *AIP Acquisition*, 2012 WL 5199118, at *4 ("[T]he court finds it significant that [the defendant] is a Delaware corporation and has necessarily consented to suit in this jurisdiction."). The decision to incorporate in Delaware suggests that the inconvenience of litigating here is somewhat less than the court would ordinarily presume it to be in this case. Therefore, the court finds this factor to be neutral.

---

[6] The court assumes that the travel costs for Mitel Delaware would actually be decreased by litigating in California, as its principal place of business is in Arizona.

### e. *Convenience of the witnesses*

The next *Jumara* factor is "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." 55 F.3d at 879. Here, Facebook maintains that convenience of the witnesses is best achieved in the proposed transferee forum because: (1) Facebook will undoubtedly be the source of the most relevant witnesses and the majority of these witnesses are in the Northern District of California; (2) there are likely no witnesses in the District of Delaware Court; (3) Facebook anticipates that non-party witnesses residing within the subpoena power of the Northern District of California will be critical to issues of invalidity of the patents-in-suit and that the convenience of such witnesses is "[o]ften cited as the most important factor in passing on a motion to transfer under Section 1404(a)"[7]; (4) it has identified such third-party witnesses who "may possess information material to issues in this case"; and (5) the majority of its employees knowledgeable about the design, development, and operation of Facebook's website are located in Northern California. (D.I. 19 at 8-10). With regard to Facebook's proposed third-party witnesses, it identifies ten inventors of cited prior art to the patents-in-suit, all of whom live in California and would be outside the subpoena power of the District of Delaware. In response, Mitel challenges that the location of party witnesses is immaterial and that the defendants have not sufficiently demonstrated that the relevant third-party witnesses will actually be unavailable to testify in Delaware. (D.I. 24 at 10-13.)

As an initial matter, Mitel is correct that "[p]arty witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis as each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. c. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). Mitel, however, overstates Facebook's burden of

---

[7] *See* 15 Charles Allan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 3851 (3d ed. 2008).

demonstrating that a third-party witness will be unavailable or unwilling to travel to Delaware. (D.I. 24 at 10.) Though it is true that none of the third-party inventors of prior art to the instant patents-in-suit have explicitly stated that they will refuse to appear for trial in Delaware, the court does not require such a clear statement. It is enough that likely witnesses reside beyond the court's subpoena power and that there is reason to believe those witnesses will refuse to testify absent a subpoena. *See Smart Audio Techs.*, 2012 WL 5865742, at \*8 ("[T]his factor is only given weight when there is some reason to believe that a witness actually will refuse to testify absent a subpoena."); *see also AIP Acquisition*, 2012 WL 5199118, at \*4; *Acuity Brands, Inc. v. Cooper Indus., Inc.*, No. 07-444-GMS, 2008 WL 2977464, at \*2 (D. Del. July 31, 2008). To this end, simply stating that a witness would be unavailable because he or she is outside the subpoena power of a court is, without more, insufficient.

Here, although Facebook has submitted a declaration indicating that ten prior art inventors are in California, the court finds this insufficient to demonstrate that relevant third-party witnesses would not appear in litigation in Delaware. Specifically, and as Mitel correctly notes, Facebook's selection of ten prior art inventors ignores the twenty-seven other named inventors of eleven other cited prior art U.S. patents and publications who live outside California. The court finds this selective identification of potentially relevant third-party witnesses to be unpersuasive and, in fact, arguably disingenuous. Moreover, and supporting this conclusion, Mitel identifies that fourteen of the other prior art inventors appear to be located on the East Coast.[8] (D.I. 24 at 11-12.) Further, Mitel has submitted the sworn declarations of Thomas Gray and Debbie Pinard, first-named inventors of the asserted patents and former employees of Mitel, indicating that they would be

---

[8] As Mitel does in its Answering Brief, the court notes that Facebook appears to be relying on the location of these potential witnesses as of the date of the prior art references—approximately 1988-1998—and fails to provide any indication as to where the witnesses presently reside. (D.I. 24 at 12 n. 5.).

willing to appear in Delaware for trial if necessary. (*Id.* at 12.); *see also Investpic, LLC v. SAS Institute, Inc.*, Civ. No. 10-1028-RGA, 2012 WL 1753665, at \*3 (D. Del. May 15, 2012) (noting that in patent matters "it is unlikely that the identified employees will end up testifying in person or even by deposition").

Therefore, because Facebook has failed to demonstrate that relevant third-party witnesses will be unavailable should this litigation proceed in the District of Delaware, the court finds this factor neutral.[9]

### f. *Location of books and records*

Finally, the court accounts for "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. Facebook asserts that much of the evidence relevant to this case will be located in the Northern District of California, such as, documents related to general operations, marketing, financials, and customer services. (D.I. 19 at 10-11.) In addition, Facebook notes that its "highly sensitive" source code is maintained at its Menlo Park, California facility. (*Id.* at 11.) In response, Mitel argues that: (1) "[t]his Court has made clear that the mere location of books and records is not the relevant inquiry;" and (2) Facebook has not demonstrated that relevant documents cannot be produced in Delaware. (D.I. 24 at 13 (citing *Carl Zeiss Meditec, Inc. et al. v. Optovue, Inc.*, C.A. No. 10-084-GMS, 2011 WL 1419714 (D. Del. Apr. 13, 2011).)

In consideration of the parties' arguments and the relevant law, the court agrees with Facebook on this point. The court has recognized that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where

---

[9] The court also rejects Facebook's argument that California would be the more convenient forum for the Canadian inventors. Specifically, and as Mitel details in its Answering Brief, Delaware is approximately 390 miles from Ottawa, whereas Ottawa is approximately 2,400 miles to California. There are direct flights available from Ottawa to Philadelphia, while there are no direct flights from Ottawa to San Francisco. (*Id.* at 12.).

the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *see also Smart Audio Techs.*, 2012 WL 5865742, at \*9. Because Facebook is physically located in the Northern District of California, it is reasonable to presume that much of the evidence will be found there. Though modern technology makes the task of transporting electronic evidence far less onerous, the court must nevertheless accord at least some weight to this factor. *See In re Link_A_Media Devices Corp.*, 662 F.3d at 1224; *Smart Audio Techs.*, 2012 WL 5865742, at \*9. As such, this factor weighs slightly in favor of transfer.

2. Public Interest Factors

The parties limit their briefing on the public interest factors to: (1) "practical considerations that could make the trial easy, expeditious, or inexpensive"; (2) local interest in the ligation; and (3) relative administrative difficulty. (D.I. 19 at 12-13.)

a. *Practical Considerations*

*Jumara* instructs that courts should look to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. Facebook contends that transferring this action to the district where much of the relevant evidence is located, where likely third-party witnesses reside, and where it is headquartered and operates its primary engineering facilities and management team offices will help to avoid excessive litigation costs and unnecessary disruption to its employees. Moreover, Facebook notes that it has filed a lawsuit against Mitel Networks and Mitel Delaware in the Northern District of California and, therefore, "it will be possible to focus the dispute the parties in a single location, thereby saving Facebook and Mitel the expense of litigating in two forums on opposite coasts." (D.I. 19 at 11.) Facebook asserts that it was within its right to file that litigation in the Northern District of California five months after Mitel initiated the instant suit because it is "entitled to defend its intellectual property" and that District is its

14

"home turf." (D.I. 29 at 5-6.) Finally, Facebook details that both it and Mitel maintain offices in the proposed transferee district, which would reduce administrative costs, and Facebook would not have to retain local counsel. (D.I. 19 at 11.)

In response, Mitel asserts that: (1) Facebook has not identified with specificity which purported witnesses and/or employees would be potentially inconvenienced, the materiality of such witnesses, and/or how those witnesses would be inconvenienced; and (2) the court should give no weight to the fact that there is a second lawsuit between the parties in the Northern District of California because Facebook's filing of that action five months after Mitel brought this suit was a "litigation tactic." (D.I. 24 at 14.) Mitel asserts that "[s]uch litigation-driven tactics should have no bearing on the [§]1404(a) analysis." (*Id.*)

The court largely agrees with Facebook that the practical considerations of having an easy, expeditious, and inexpensive trial weighs slightly in favor of transfer. Specifically, while Facebook failed to sufficiently identify the unavailability of third-party witnesses to establish that the private interest factor "witness convenience" favors transfer, it has established that its employees, headquarters, primary engineering and design facilities, management team offices, potentially relevant documentation, and source code are in the Northern District of California. (D.I. 19 at 11; D.I. 29 at 5.) Moreover, and as Facebook correctly notes, unlike Mitel, whose likely witnesses (i.e., inventors of the patents-in-suit) are known at the outset of the litigation, Facebook cannot yet know the "specific witnesses it will need at trial until Mitel identifies the specific instrumentalities and functions of Facebook's website it contends infringes." *See Robocast, Inc. v. Apple, Inc.*, C.A. No. 11-235-RGA, 2012 WL 628010, at *3 (D. Del. Feb. 24, 2012) ("Unfortunately, a patent case is not decided like a car accident, where the fact witnesses—or likely fact witnesses—can be identified from day one. All that can be concluded about likely trial

witnesses is that a year and a half to two years from now, more of them are more likely to be in California than in Delaware or within 100 miles of Wilmington."). While the court did not take into consideration issues of economic cost and logistical convenience with respect to potentially relevant Facebook employees when assessing "witness convenience," it can consider such factors here in determining the balance of "practical considerations." For the reasons noted, and in consideration of the fact that neither party operates nor has facilities, offices, or employees in Delaware, the court finds that the practical considerations of efficiency, expense, and ease favor transfer.

This conclusion is further supported by the facts detailed in the private interest factor "convenience of the parties" discussion above. Specifically, while the court found that factor neutral because Facebook is incorporated in Delaware and, therefore, cannot argue that it is an inconvenient forum, the underlying facts discussed in that section do recommend transfer as the court finds that the aggregate litigation costs would be reduced by litigating in California. Thus, the court concludes that the "practical considerations" factor weighs in favor of transfer.

b. *Local interest in the litigation*

The transfer analysis requires that the court examine "any local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879. Facebook argues that the Northern District of California has a "significant interest in this dispute" because: (1) its likely witnesses and headquarters are in the District; (2) the allegedly infringing activities, research and development of the accused products, and knowledgeable witnesses are located there; (3) Mitel's allegations call into question the work and reputation of several individuals responsible for that work; and (4) Delaware does not have a "significant interest" in this litigation because Mitel Networks, a Canadian company, is the owner of the patents-in-suit and the real party in interest, not Mitel

16

Delaware. (D.I. 19 at 11-12; D.I. 29 at 6.) Conversely, Mitel argues that Delaware has a

"significant interest in deciding this controversy" because both Mitel and Facebook are Delaware

corporations.[10] (D.I. 24 at 15.)

The court, however, recently concurred with the position Judge Robinson expressed on this

issue in *Helicos Biosciences Corp. v. Illumina, Inc.*, wherein she explained:

> [P]atent litigation does not constitute a local controversy in most cases. Patent
> cases implicate constitutionally protected property rights. The resolution of patent
> cases is governed by federal law reviewed by courts of national (as opposed to
> regional) stature. Moreover, to characterize patent litigation as "local" undermines
> the appearance of neutrality that federal courts were establish to provide and flies
> in the face of the national (if not global) markets that are affected by the outcome
> of these cases.

858 F. Supp. 2d 367, 375 (D. Del. 2012). Thus, this factor is typically neutral in the context of

patent litigation because patent issues usually "do not give rise to a local controversy or implicate

local interests." *TriStrata Tech., Inc. v. Emulgen Labs, Inc.*, 537 F. Supp. 2d 635, 643 (D. Del.

2009).

Here, the court is not convinced by Facebook's argument that there is a local interest in

this action in the Northern District of California that would weigh in favor of transfer. Rather,

while there may well be a "local interest" in California, the court disagrees that that interest

represents a "local controversy" in the context relevant here. The action here is governed under

federal law, brought against a national corporation, and concerns a product available throughout

the United States. In view of these considerations, the court finds that this action is appropriately

---

[10] The court notes that Mitel, in its Answering Brief, asserts in a two-sentence subsection that the public
interest factor "public policies of the fora" weighs in favor of transfer because "public policy of Delaware encourages
the use by Delaware corporations of Delaware as a forum for resolution of business disputes." (D.I. 24 at 16 (quoting
*Intellectual Ventures I LLC*, 842 F. Supp. 2d at 760 (citation omitted)).) Facebook did not directly address this factor
in its Reply. The court disagrees with Mitel's argument and finds this factor, to the extent it is raised, neutral. As
noted, and as Facebook reiterates in connection with its argument on the "local interest" factor, the patents-in-suit are,
in fact, owned by Mitel Networks, not by Mitel Delaware. Consequently, the court is not convinced that this factor
would weigh in favor of transfer, as the patent owner is a Canadian corporation.

characterized as implicating a national, rather than a local, controversy. Therefore, the court finds the "local interest" factor to be neutral.

c. *Relative administrative difficulty*

Finally, the court also considers "the relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. On this point, Facebook asserts, and Mitel does not challenge, that the Northern District of California's docket is less congested than the District of Delaware's docket. (D.I. 24 at 13.) Specifically, the Administrative Office of the U.S. Courts indicates that the Northern District of California has on average 293 cases pending per judge, while the District of Delaware has approximately 425 cases pending per judge. (*Id.* at 13, n. 1.) Facebook has failed to demonstrate, however, that the sheer number of cases in Delaware will result in any material administrative difficulty, increased time to trial, or prejudice the parties in any way. As such, the court weighs this factor only lightly in favor of transfer.

C. Transfer Analysis Summary

Considering the *Jumara* factors as a whole, the court concludes that the defendants have met their burden of demonstrating that the interests of justice and convenience strongly favor transfer. Only Mitel's forum preference weighs against transfer and, as the court explained above, that preference does not warrant maximum deference in this case, particularly because Mitel Delaware is not the assignee or licensee of the patents-in-suit. On the other hand, several factors counsel transfer: the defendant's choice of forum, whether the claims arose elsewhere, the location of relevant books and records, practical considerations that might make trial easy, expeditious, and less expensive, and administrative efficiency.

## V. CONCLUSION

For the reasons discussed above, the court will grant Facebook's Motion to Transfer (D.I. 18)

this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a).


Dated: May ___, 2013

CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MITEL NETWORKS CORPORATION and MITEL (DELAWARE), INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 12-cv-325 (GMS) |
| FACEBOOK, INC., | ) ) | |
| Defendant. | ) ) ) | |

## **ORDER**

At Wilmington, this _l st_ day of May, 2013, consistent with the Memorandum Opinion

issued this same date, IT IS HEREBY ORDERED THAT:

1. The Facebook's Motions to Transfer Venue to the Northern District of California (D.I. 18) is GRANTED; and

2. The above-captioned action is transferred to the U.S. District Court for the Northern District of California.

CHIEF, UNITED STATES DISTRICT JUDGE